**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**ADELYS VALLES,**
**an individual,**

**Plaintiff,**

**v.** **Case No.**

**CITY OF CLEWISTON, FLORIDA,**
**a Florida municipality,**

**Defendant.**
______________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ADELYS VALLES ("Valles" or "Plaintiff"), by and through the undersigned counsel, does bring this civil action against Defendant, CITY OF CLEWISTON, FLORIDA, (the "City" or "Defendant") and alleges as follows:

## Nature of the Action

This action is brought under Title I and Title II of the Americans with Disabilities Act, as amended, 42 U.S.C. §12101 *et seq.* ("ADA"), the Florida Civil Rights Act of 1992, §760.10 *et seq.* ("FCRA") the Family and Medical Leave Act, 29 U.S.C. §2601, *et. seq*. ("FMLA") and the First Amendment of the U.S. Constitution, via 42 U.S.C. §1983, to redress Defendant's unlawful employment practices, including Defendant's wrongful and illegally motivated termination of Plaintiff's employment.

**Parties**

1. Plaintiff was a resident of Hendry County, Florida, at all times relevant to this matter and was formerly employed by Defendant.

2. Defendant is a Florida municipality located in Hendry County, Florida at all times pertinent to Plaintiff's claims.

3. Defendant was Plaintiff's employer within the meaning of the ADA, FCRA and FMLA, at all times relevant to this action.

4. Plaintiff was at all times relevant hereto an eligible employee as defined by the ADA, FCRA and FMLA, at all times relevant to this action.

**JURISDICTION AND VENUE**

5. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1337, 1343 & 1345.

6. The Middle District of Florida, Fort Myers Division is the proper venue for this action pursuant to 28 U.S.C. §1391 (b)(1) and (b)(2) because this is the District and Division in which Plaintiff resides and in which the events or omissions giving rise to the claims occurred.

7. Plaintiff has performed all conditions precedent necessary to the maintenance of this action, if any, including the filing of a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), receiving a right to sue notice from same and timely filing the present action.

## FACTUAL BACKGROUND

8. In or about April of 2019, Valles began her employment with Defendant as the Administrative Assistant to the Chief of Police for the City of Clewiston.

9. Valles was well regarded in the performance of her job duties on behalf of Defendant, as reflected in numerous reviews, an employee of the year award in 2024, additional accolades, as well as consistently good feedback from management and a complete absence of any disciplinary actions.

10. In August of 2025, the Chief of Police, Thomas Lewis, whom Valles had worked under since approximatley June of 2021, was replaced under suspicious circumstances by an interim Chief, Tico Salgado ("Salgado").

11. Salgado chose to conduct himself and manage the Police Department in such a way that he sometimes would ignore policies and/or procedures that the law enforcement agency was legally obligated to follow.

12. Valles would point out to Salgado when he would promote or engage in making such illegal and/or inappropriate decisions. He would often ignore such warnings and would grow resentful. Eventually in response to her rasing such concerns he began questioning her loyalty to him as Police Chief and would threaten her employment security as well.

13. One such example occurred when an officer had worked approximately 141 hours of overtime and 172 hours of regular time, totaling a combined 313 hours during two (2) pay periods one month in violation of City policy. The result was that the officer had to be hospitalized due to exhaustion.

14. When Valles discussed the matter and policy violation with Salgado he opined to her that it was the officer's decision to do so.

15. In response to her speaking with him about such issues Salgado began treating Valles in a disparate and hostile manner. He would consistently demand of her the same level of loyalty that Plaintiff had given to his predecessor. Salgado would threaten to demote Valles to a dispatcher position as part of his campaign to intimidate and control Plaintiff from expessing her important concerns.

16. As a direct and proximate result of Salgado's unique and unjustified hostile treatment of Valles, she began to develop extreme anxiety, noticing same in September of 2025.

17. On or about October 15, 2025, Salgado issued Valles a disciplinary Letter of Guidance without identifying any specific policy violation or underlying facts supporting the action.

18. Valles was stunned by this wholly unwarranted disciplianry action, and she experienced a panic attack that same day that forced the Plaintiff to leave work early and seek medical attention.

19. Valles' physician determined that she qualified for and required intermittent FMLA leave.

20. Plaintiff's condition required her to seek various leave time under the FMLA to address her medical issues, as her work environment was contributing to the symptoms she was experiencing.

21. Regardless, Salgado refused to sign Valles legitimate leave request documentation, contending without any legitimate basis, that the wording used on the form was incorrect.

22. After attempting to exercise her rights under the FMLA, on October 20, 2025, Salgado issued Valles a formal reprimand for alleged insubordination and unprofessional conduct, which also failed to provide any facts that would warrant or support such a disciplinary action.

23. As a result of Salgado's hostile and retaliatory treatment, Valles' anxiety increased significantly, including significant spikes in her blood pressure.

24. Valles complained about the above hostile and retaliatory treatment that she was forced to endure to senior management with the City, including her submission of formal complaints to the City Manager regarding Salgado. Unfortunately, her complaints were ignored and never acknowledged or investigated.

25. On October 22, 2025, Plaintiff received her third disciplinary action and a job reassignment letter that she was being reassigned and demoted from Administrative Assistant to a Dispatcher position.

26. As the other disciplinary actions had before, the reassignment decision caused Valles to suffer significant additional stress, particularly because it resulted in a new and inconvenient schedule for Plaintiff; a single mother.

27. After the reassignment Plaintiff suffered another panic attack and had to take an approximately one hour of leave to see her physician and address the dangerously elevated blood pressure and anxiety she was experiencing.

28. Shockingly, Plaintiff's legally protected leave that day resulted in her receiving another disciplinary action or write up for taking the one-hour leave itself.

29. The foregoing discipline occurred despite Defendant's Human Resources Department having received documentation supporting Valles' FMLA leave request, which was ultimately approved. Plaintiff was scheduled for leave from October 23, 2025, through November 6, 2025, though Defendant failed to provide her with such necessary intermittent leave despite having no valid based to deny same.

30. October 23, 2025, while on her FMLA leave, Valles submitted a detailed letter to the City Manager, Danny Williams, wherein she described the hostile treatment and illegally motivated conduct she had experienced from Chief

Salgado. The Plaintiff's complaint and the correspondence itself was never responded to, acknowledged or investigated. Instead, she was subjected to further and more dramatic hostile treatment in retaliation when Valles was locked out of the work computer system after leaving work.

31. Valles was prepared to return to work from her legally protected leave on November 6, 2025; her FMLA return date. However, she instead received a Notice of Employment Termination and an Employee Warning Notice from the Defendant City. Both documents reflected a failure to follow applicable procedures, and substantial portions of the warning form were simply left blank and completed after Valles' departure.

32. The Termination Notice itself specifically cited "consistency in attendance" and reliability as the basis for Plaintiff's termination. Moreover, he directly referenced Valles approved FMLA leave time, as prior to any such leave, Plaintiff enjoyed perfect attendance.

33. Valles appealed the employment termination decision by submitting a formal grievance seeking reinstatement. Instead of taking an opportunity to reverse its illegally motivated termination, Defendant chose to ignore the grievance, failing to even acknowledge it.

34. Reflecting Salgado's hostile and retaliatory animus towards Valles, Salgado continued retaliating against Plaintiff after her termination by attempting to interfere with her efforts to obtain subsequent employment.

35. Likewise, on October 21, 2025, at 9:36 a.m., City Manager Williams sent an email to all City Directors and the City Attorney. Most of the recipients had no involvement in Valles' issues with Salgado. The email stated in pertinent part: *"We need to make sure Adelys understands the proper way to report her concerns."*

36. The Email seems to have been some type of attempt to deflet anticipated claims of disparte retaliatory treatment by Valles, as she had already previously raised her concerns regarding Salgado's treatment of her through the appropriate channels.

37. Plaintiff had already complained to City Manager Williams as he serves as Salgado's direct supervisor. As such, Valles followed established procedures to complain about such inappropriate conduct, despite Williams' refusal to acknowledge any of Plaintiff's grievances and attempt to deflect suspicion.

38. In addition, based upon information and belief, an agent of Defendant disclosed Valles' reason for seeking leave under the FMLA to a friend of Salgado's, who then publicly posted Plaintiff's medical information on a Facebook post that blasted her. A subsequent public records request revealed that such HIPPA protected information was leaked internally to Salgado's friend.

39. Plaintiff has been damaged as a direct and proximate result of Defendant's illegal conduct.

40. As a result of the foregoing, Plaintiff has had to retain the services of undersigned counsel and has agreed to pay said counsel a reasonable attorney's fee.

**COUNT I - FMLA RETALIATION UNDER 29 U.S.C. §2615**

41. Plaintiff adopts and re-alleges paragraphs 1 through 40 as if fully set forth herein.

42. Under 29 U.S.C. §2612, an eligible employee shall be entitled to a total of 12 workweeks of leave for the birth or adoption of a child; to care for a child, spouse, or parent with a serious health condition; or because of a serious health condition that makes the employee unable to perform the functions of the employee's position.

43. An eligible employee is defined in the statute as "an employee who has been employed…for at least 12 months by the employer" and who has at least 1,250 hours of service with such employer during the previous 12-month period" 29 U.S.C. § 2611(2)(A).

44. Under 29 U.S.C. §2615, it is unlawful for an employer to interfere with, restrain, or deny the exercise of or attempt to exercise, any rights provided under the FMLA.

45. During Plaintiff's employment she was an eligible employee because she had been employed by Defendant for at least twelve months and had accumulated over 1,250 hours of service with Defendant during the previous 12-month period. This constituted a valid claim asserted under 29 U.S.C. §2612.

46. Plaintiff has been harassed, subjected to hostile and disparate treatment by Defendant in retaliation for her having exercised her FMLA rights by using FMLA benefits.

47. There is more than a causal connection between the protected activity that Plaintiff engaged in and the employer's illegal and adverse employment actions, including the termination of Plaintiff's employment.

48. The unlawful employment practices complained of herein and the actions of Defendant and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights in violation under 29 U.S.C. §2612.

49. Defendant's aforementioned actions violated 29 U.S.C. §2615.

50. Plaintiff has suffered damages as a direct, proximate, and foreseeable result of Defendant's and its agents' actions.

**WHEREFORE,** Plaintiff, Adelys Valles, demands judgment as follows:

a) Grant a permanent injunction enjoining Defendant and its agents from engaging in any employment practice violative of FMLA;

b) Declare Defendant's conduct to be in violation of the FMLA and order Defendant to institute policies, practices and programs which provide equal employment opportunities for individuals and which eradicate the effects of its past and present unlawful practices;

c) Grant a judgment requiring Defendant to pay to Plaintiff any back wages and back benefits found to be due and owing to her at the time of trial, liquidated damages to be proved at trial, non-economic compensatory damages, and prejudgment interest thereon;

d) Grant Plaintiff her costs (including expert fees) and an award of reasonable attorney's fees; and

e) Grant Plaintiff trial by jury and such further relief as the Court deems just and equitable.

## **COUNT II – DISABILITY DISCRIMINATION IN VIOLATION OF THE FCRA**

51. Plaintiff adopts and re-alleges paragraphs 1 through 40 as if fully set forth herein.

52. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the FCRA in that Plaintiff was capable of performing all essential functions of the position she held with or without a reasonable accommodation.

53. Likewise, at all times relevant to this action, Plaintiff (a) suffered from one or more actual disabilities and/or physical impairments that substantially limited one or more major life activities.

54. Plaintiff suffered from physical and/or mental impairments as defined by 29 C.F.R. § 1630.2(h) at all times relevant to this action.

55. Plaintiff's impairments affected one or major life activities.

56. Finally, Plaintiff was perceived by Defendant as being actually disabled and/or substantially limited in one or more major life activities in that Plaintiff sought an accommodation from Defendant and experienced a physically impairing event at the workplace.

57. Defendant was prohibited under the FCRA from discriminating against Plaintiff because of her disabilities with regard to providing her reasonable accommodations and/or not treating Plaintiff adversely because of her disabilities with regard to other terms, conditions, and privilges of employment.

58. Defendant violated the FCRA by, among other things, treating her in a harassing, hostile and disparate manner, terminating her employment and by otherwise discriminating against her.

59. Plaintiff has been damaged as a direct and proximate result of Defendant's illegal conduct.

**WHEREFORE**, Plaintiff requests this Honorable Court to:

a. Grant a permanent injunction enjoining Defendant from engaging in any employment practice violative of the FCRA;

b. Declare Defendant's conduct to be in violation of the FCRA and order Defendant to institute policies, practices and programs that provide equal employment opportunities for individuals and which eradicate the effects of its past and present unlawful practices;

c. Grant a judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial and prejudgment interest thereon;

d. Grant Plaintiff her costs (including expert fees) and an award of reasonable attorney's fees; and

e. Grant Plaintiff trial by jury and such further relief as the Court deems just and equitable.

## <u>COUNT III– DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA</u>

60. Plaintiff adopts and re-alleges paragraphs 1 through 40 as if fully set forth herein.

61. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA in that Plaintiff was capable of

performing all essential functions of the position she held with or without a reasonable accommodation.

62. Likewise, at all times relevant to this action, Plaintiff (a) suffered from one or more actual disabilities and/or physical impairments that substantially limited one or more major life activities.

63. Plaintiff suffered from physical and/or mental impairments as defined by 29 C.F.R. § 1630.2(h) at all times relevant to this action.

64. Plaintiff's physical impairments affected one or major life activities.

65. Finally, Plaintiff was perceived by Defendant as being actually disabled and/or substantially limited in one or more major life activities in that Plaintiff sought an accommodation from Defendant and experienced a physically impairing event at the workplace.

66. Defendant was prohibited under the ADA from discriminating against Plaintiff because of her disabilities with regard to providing her reasonable accommodations and/or not treating Plaintiff adversely because of her disabilities with regard to other terms, conditions, and privileges of employment.

67. Defendant violated the ADA by, among other things, treating her in a harassing, hostile and disparate manner, terminating her employment and by otherwise discriminating against him.

68. Plaintiff has been damaged as a direct and proximate result of Defendant's illegal conduct.

**WHEREFORE**, Plaintiff requests this Honorable Court to:

a. Grant a permanent injunction enjoining Defendant from engaging in any employment practice violative of the ADA;

b. Declare Defendant's conduct to be in violation of the ADA and order Defendant to institute policies, practices and programs that provide equal employment opportunities for individuals and which eradicate the effects of its past and present unlawful practices;

c. Grant a judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial and prejudgment interest thereon;

d. Grant Plaintiff her costs (including expert fees) and an award of reasonable attorney's fees; and

e. Grant Plaintiff trial by jury and such further relief as the Court deems just and equitable.

**COUNT IV – VIOLATION OF THE FIRST AMENDMENT OF THE U.S. CONSTITUTION, VIA 42 U.S.C. § 1983**

69. Plaintiff adopts and re-alleges paragraphs 1 through 40 as if fully set forth herein.

70. At all times material hereto, Plaintiff was employed by the City and was acting as a private citizen when she spoke publicly regarding the City's violations of City ordinances, Florida law and other matters of public concern, as described above.

71. Plaintiff's speech addressed matters of public concern, including the violations of City policies, procedures and Florida law as described above.

72. Plaintiff's speech was protected by the First Amendment to the United States Constitution.

73. Interim Chief Salgado and other agents of Defendant acted under color of state law and within the scope of their respective authority when they became aware of Plaintiff's protected speech.

74. Following Plaintiff's protected speech, Salgado subjected Plaintiff to adverse employment actions, including retaliatory hostile conduct and terminating Plaintiff’s employment.

75. Plaintiff's protected speech was a substantial or motivating factor in Defendant’s decision to take adverse employment action against her.

76. Defendant’s actions would deter a person of ordinary firmness from engaging in protected speech.

77. Defendant lacked an adequate governmental justification for its retaliatory conduct.

78. As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages, including lost wages, lost benefits, emotional distress, mental anguish, reputational harm, and other compensatory damages.

79. Defendant City is liable because the retaliatory actions were taken pursuant to an official policy, custom, practice, or by a final policymaker whose decisions constituted municipal policy.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all counts so triable.

Dated: November 16, 2026

Respectfully submitted,

**TOBIN LAW GROUP, PLLC**

*/S/ Bradley A. Tobin*
Bradley A. Tobin, Esquire
Florida Bar No. 0101818
Westchase Commons
13043 W. Linebaugh Ave.
Tampa, Florida 33626
Tel: 813.452.6199
Fax: 813.830.7200
Email: btobin@tobinlawgroup.com
*Attorney(s) for Plaintiff.*